IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 17-cv-01445-PAB-KLM

THAD LINDSAY, on behalf of himself and all similarly situated persons,

    Plaintiff,

v.

CUTTERS WIRELINE SERVICE, INC., a Utah corporation,
MESA WIRELINE, LLC, a Delaware limited liability company,
LONE WOLF WIRELINE, INC., a Utah corporation,
WIRELINE SPECIALTIES, INC., a New Mexico corporation,
CAPITAN CORPORATION, a Texas corporation, and
CAPITAN WIRELINE, LLC, a Texas limited liability company, collectively d/b/a Cutters Wireline Group,

    Defendants.

## ORDER

This matter is before the Court on Plaintiff's Motion for Approval of *Hoffman-LaRoche* Notice [Docket No. 27].

## I. BACKGROUND

This is a wage and hours dispute. Plaintiff Thad Lindsay worked as a wireline operator for defendant Cutters Wireline Service, Inc. ("Cutters"). Docket No. 22 at 2, ¶ 2; Docket No. 29-1 at 4, ¶ 20. Cutters is the parent company of the other defendants. Docket No. 29-1 at 1, ¶ 3. The president of Cutters is responsible for overseeing all administrative and operational functions of all defendants. *Id*. at 2, ¶ 4. Defendants provide wireline services to oil and gas production companies in Colorado and other states. *Id*. at 2, ¶ 5.

On June 14, 2017, plaintiff filed his complaint. Docket No. 1. The complaint includes claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, claims for violations of state wage and hours laws, and a breach of contract claim. Docket No. 1 at 6-9. Plaintiff brings his FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b). Docket No. 1 at 6, ¶ 21. The present motion requests that the Court conditionally certify the collective action and approve the proposed Notice of Collective Action ("Notice") to be disseminated to the members. Docket No. 27.

## II. ANALYSIS

### A. Conditional Certification

Plaintiff asks the Court to conditionally certify the case as a collective action pursuant to § 216(b) of the FLSA, which provides in pertinent part:

> Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in [Section 207] may be maintained against any employer . . . in any Federal . . . court of competent jurisdiction by any one or more employees *for and in behalf of himself or themselves and other employees similarly situated*.

29 U.S.C. § 216(b) (emphasis added). There is a two-step approach for determining whether plaintiffs are "similarly situated" for purposes of FLSA collective action certification. *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).[1] A

---

[1] *Thiessen* involved a collective action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Because the ADEA adopts the collective action mechanism set forth in FLSA § 216(b), courts apply *Thiessen* to FLSA collective actions. *See Kaiser v. At The Beach, Inc.*, 2010 WL 5114729, at *4 n.9 (N.D. Okla. Dec. 9, 2010); *see also Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004).

court's initial certification comes at the notice stage, where courts determine whether the putative collective action members are similarly situated for purposes of sending notice to putative members. *Id.* at 1102. At this first stage, plaintiff is required to provide "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id.*; *see also Stransky v. HealthONE of Denver, Inc.*, No. 11-cv-02888-WJM-MJW, 2012 WL 6548108, at *4 (D. Colo. Dec. 14, 2012). This is a "lenient" standard, *Baldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005), "which typically results in conditional certification of a representative class." *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007). The second stage, which comes at the conclusion of discovery, applies a stricter standard of "similarly situated," including application of at least four factors, to determine whether the case can proceed as a collective action. *Thiessen*, 267 F.3d at 1102-03.

Plaintiff seeks to represent a collective action consisting of "all current and former Wireline Operators who worked for any entity associated or affiliated with Cutters Wireline Group at any time from June 14, 2014 to present." Docket No. 27 at 4. Plaintiff claims that defendants "maintained a pay scheme that resulted in Wireline Operators being underpaid for their overtime work." *Id*. at 8. In his complaint, plaintiff alleges that the pay scheme "fail[ed] to compensate employees at 'time and one-half' their regular rate of pay for all overtime hours worked." Docket No.1 at 1-2, ¶ 1. Plaintiff alleges he "was required to work overtime hours, and did so frequently," but that he "was not compensated at the mandated time and one-half rate for these

3

overtime hours." *Id*. at 4, ¶ 12.

Defendants argue that plaintiff has not set forth substantial allegations that he and other members are similarly situated because he does not explain "how the application of a common overtime policy to Plaintiff and the proposed class members allegedly violated the FLSA." Docket No. 29 at 6 (emphasis removed). Defendants further argue that plaintiff improperly fails to distinguish between the employees of Cutters and its subsidiaries who "operate separately from one another in different states with separate payroll systems and varying policies." *Id*. at 7. The Court finds these arguments unpersuasive. Plaintiff alleges that, under defendants' payroll policies, he was not paid a premium rate for overtime hours worked as required by the FLSA. Docket No. 1 at 4, ¶ 12. Defendants do not indicate any variance between Cutters' policies and those of its subsidiaries that is relevant to plaintiff's claim that defendants did not compensate overtime hours at a premium rate, much less provide any evidence of such a variance. *See* Docket No. 29-1. In light of the absence of any indication that defendants' pay schemes varied, the Court finds plaintiff's allegations are sufficient to show that defendants' wireline operators were subject to a common payment scheme.[2] *Arfsten v. Cutters Wireline Serv., Inc.*, No. 16-cv-01919-MSK-KMT, 2017 WL 2400489, at *1 (D. Colo. May 26, 2017) (finding allegations that employees "were subject to the same compensation policies concerning the payment of overtime" were sufficient to show substantial similarity).

---

[2] Because the Court finds that plaintiff's allegations are sufficient, the Court does not address the parties' arguments concerning discovery responses made by all but one of defendants in a separate lawsuit. *See* Docket No. 27-1.

Plaintiff next argues that the Court should deny initial certification because of individualized issues arising under the Motor Carrier Act exemption, 29 U.S.C. § 213(b)(1) (the "MCA exemption"). Docket No. 29 at 9.[3] Under the MCA exemption, "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to" 49 U.S.C. § 31502 is exempt from the maximum hours and overtime provisions of the FLSA at 29 U.S.C. § 207(a)(1). 29 U.S.C. § 213(b)(1). "FLSA exemptions are construed narrowly and against the employer" and the "employer has the burden to prove that the exemption applies." *Vallejo v. Garda CL Sw., Inc.*, 56 F. Supp. 3d 862, 868 (S.D. Tex. 2014) (citations omitted). "For the Motor Carrier Act exemption to apply, the employee must: (1) be employed by a motor carrier subject to the Secretary of Transportation's jurisdiction; (2) be engaged in activities directly affecting motor vehicle safety; and (3) be engaged in activities involving the interstate transportation of goods." *Id*. (citing 29 C.F.R. § 782.2). Plaintiff argues that it is premature to address this issue at the initial certification stage because claimants have not yet been identified. Docket No. 32 at 3. He also argues that there are likely to be so few opt-in plaintiffs that individualized issues are unlikely to overwhelm the case. *Id*. at 4. The Court agrees with plaintiff that this issue is premature. *See Thiessen*, 267 F.3d at 1103 (noting that issues addressed at final certification include the "(1) disparate factual and employment settings of the individual plaintiffs; [and] (2) the various defenses available to defendant which appear

---

[3] Defendants also argue that the separate proposed class under Fed. R. Civ. P. 23 "presents an added challenge," but presents no authority or persuasive argument why the existence of state law claims should prevent plaintiff from pursuing collective action claims under the FLSA. Docket No. 29 at 11.

to be individual to each plaintiff"). Defendants' arguments are supported by only generalized statements about the nature of the wireline operators' work which are insufficient to show that the MSA exception will present substantial individualized issues. In fact, defendants do not even show that the MSA exemption applies to plaintiff. See Docket No. 29-1 at 3-4, ¶¶ 10-19. "Thus, the question of whether [plaintiff], or indeed any wireline [operator] is exempt from the FLSA's requirements is a matter for another day and does not preclude the issuance of a *Hoffmann-LaRoche* notice." *Arfsten*, 2017 WL 2400489, at *2. The Court finds that plaintiff has provided substantial allegations that the putative collective action members are similarly situated. *See Thiessen*, 267 F.3d at 1102-03. Therefore, the Court conditionally certifies a collective action consisting of all current and former Wireline Operators who worked for any entity associated or affiliated with Cutters Wireline Group at any time from June 14, 2014 to present.

### B. Notice to Conditional Certification

Once a court concludes that conditional certification of an FLSA collective action is appropriate, the court may authorize plaintiff to disseminate a proper notice and opt-in consent form to putative collective action members. *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989); *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). The Court has broad discretion regarding the details of the notice sent to

potential opt-in plaintiffs. *Hoffmann-LaRoche*, 493 U.S. at 171. "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (internal citations and quotations omitted).

The proposed Notice appears to contain most of the necessary information. Docket No. 27-3. The Notice informs putative collective action members of the parties involved, the parties' general allegations, information about the collective action designation, and how to opt in. *See id.* at 1-3. In addition, the Notice provides that opt-in plaintiffs must return consent forms to opt in. Docket No. 27-3 at 3, ¶ 11. Defendants suggest a number of changes to the notice that plaintiff does not dispute and which the Court will incorporate. Docket No. 32 at 5-6. Plaintiff, however, disputes the inclusion of language (1) suggesting that opt-in plaintiffs may have to pay defendants' costs and (2) that defendants may need to participate in discovery or appear at trial. Docket No. 32 at 6-7. The Court agrees that it is proper to omit language related to costs based on plaintiff's counsel's pledge to advance costs and pay any award, *id*. at 7, to which he will be held. However, the Court finds that the Notice should explain the potential obligations or consequences for putative collective action members who choose to opt in. *See Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 566-67 (S.D.N.Y. 2012) ("[D]irect[ing] the Plaintiffs to add a provision

7

explaining the possibility that opt-in plaintiffs may be required to provide information, appear for a deposition, and/or testify."); *Luque v. AT&T Corp.*, 2010 WL 4807088, at *7 (N.D. Cal. Nov. 19, 2010) ("[I]t is appropriate to include a statement that class members might 'be required to provide information,' and so the Court adds such a statement to the Notice."). As a result, plaintiff's counsel shall add the following language to an appropriate section of the Notice:

> If you choose to join the collective action, you give up any rights to separately sue defendants about the same claim in this lawsuit and will be bound by any ruling, settlement, or judgment, whether favorable or unfavorable, on the claims asserted. While this suit is pending, you may be required to submit documents and written answers to questions or to testify under oath at a deposition, hearing, or trial.

With these modifications, the Court approves the Notice.

Defendants argue that distribution by text message and email in addition to U.S. mail should not be permitted. Docket No. 29 at 12-13. Defendants claim that collective action members' email addresses are "sensitive information" and that there are concerns that the notice could be distorted if distributed electronically. *Id*. at 13. Defendants' arguments on this issue are not well taken. As plaintiff argues, Docket No. 32 at 7-8, the hypothetical possibility that someone might modify the notice is outweighed by the benefits of utilizing methods that increase the probability of apprising collective action members of their rights. *See, e.g., Whitehorn*, 767 F. Supp. 2d at 450; *Burns v. Chesapeake Energy, Inc.*, 2017 WL 1842937, at *9 (W.D. Tex. Mar. 14, 2017) ("Nor is there a valid reason why the parties should not agree to e-mail notice in the year 2017." (citing *Page v. Crescent Directional Drilling, L.P.*, 2015 WL 12660425, at *3

(W.D. Tex. Dec. 10, 2015))).

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Approval of *Hoffman-LaRoche* Notice [Docket No. 27] is **GRANTED**. It is further

**ORDERED** that:

1. This action shall be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b). The collective action members are defined as follows:

> All current and former Wireline Operators who worked for any entity associated or affiliated with Cutters Wireline Group at any time from June 14, 2014 to present.

2. Subject to the modifications set forth above, the proposed Notice [Docket No. 27-3] is approved.

3. Within twenty-one days, defendants shall provide to plaintiff's counsel a list of all potential collective action members. The list shall include all available contact information including U.S. Mail addresses, electronic mail addresses, and phone numbers.

4. Within fifteen days after receiving this list from defendants, plaintiff shall send the Notice by First Class U.S. Mail, email, and text message to the last known address and phone number of each of the individuals identified on the above-referenced list.

5. Any individual to whom notice is sent shall "opt in" by returning the necessary documents to plaintiff's counsel within sixty days from the postmark date of the Notice.

DATED August 27, 2018.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge