IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 17-cv-01445-PAB-SKC

THAD LINDSAY, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

CUTTERS WIRELINE SERVICE, INC., a Utah corporation;
MESA WIRELINE, LLC, a Delaware limited liability company;
LONE WOLF WIRELINE, INC., a Utah corporation;
WIRELINE SPECIALITES, INC., a New Mexico Corporation;
CAPITAN CORPORATION, a Texas corporation; and
CAPITAN WIRELINE, LLC, a Texas limited liability company, collectively d/b/a Cutters Wireline Group,

    Defendants.
_____

# ORDER
_____

This matter is before the Court on Plaintiff's Renewed Motion for Class Certification of State Law Claims [Docket No. 80].

## I. BACKGROUND

Plaintiff Thad Lindsay, a resident of Colorado, worked as a wireline operator for defendant Cutters Wireline Service, Inc. ("Cutters") from August 31, 2010 to February 3, 2015. *See* Docket No. 83 at 2; Docket No. 83-1 at 3. Cutters is the parent company of various wireline companies[1] that operate in different states and regions. *See* Docket No. 80 at 2-3. Plaintiff alleges that, during the time period identified in the proposed

---

[1] "Wireline services involve the insertion of various types of equipment down a drilled well to perform certain operations, e.g., removal of blockages and perforation of pipe to allow oil and gas to flow into the well." Docket No. 80 at 2.

class, Cutters operators were paid an hourly rate plus a bonus that was calculated as a percentage of the amount of work invoiced. *Id.* at 3. Operators were paid time and a half for any work in excess of forty hours per week; however, plaintiff states that this overtime rate "was calculated based on [the] hourly rate alone." *Id.* As a result, an operator's bonus was not a factor in calculating overtime pay. *Id.* Plaintiff believes that the bonus should have been included and, therefore, he and other operators were underpaid. *Id.* Cutters eventually changed its policy and began "factoring bonus pay into overtime rates as of Summer 2016." *Id.*

According to plaintiff's motion, Cutters treats operators as exempt employees for the purposes of "state and federal overtime laws." *Id.* at 4. Nonetheless, plaintiff alleges that "Cutters agreed to treat [o]perators as non-exempt" and, therefore, agreed to pay overtime and use an operator's bonus as a factor in overtime compensation. *Id.* Because Cutters failed to do so, it "breached its agreement" with the relevant operators. *Id.*

Plaintiff filed his complaint on June 14, 2017. Docket No. 1. The complaint includes claims for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, claims for violations of state wage and hours laws, and a breach of contract claim. *Id.* at 6-9. Plaintiff brings his FLSA claim as a collective action pursuant to 29 U.S.C. § 216(b); the Court granted conditional class certification of that claim on August 27, 2018. Docket No. 45. On June 24, 2019, plaintiff filed a motion to certify a Federal Rule of Civil Procedure 23 class. *See* Docket No. 62. On March 10, 2020, the Court denied plaintiff's motion, finding that plaintiff failed to satisfy the commonality and

typicality requirements to Rule 23.  See Docket No. 79.  Plaintiff has now filed a renewed motion to certify the Rule 23 class.  See Docket No. 80.

## II.  STANDARD OF REVIEW

A district court may certify a class action if the proposed class satisfies the prerequisites of Fed R. Civ. P. 23(a) as well as the requirements of one of the three types of classes in Rule 23(b).  "The party seeking class certification bears the burden of proving Rule 23's requirements are satisfied."  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (citing *Shook v. El Paso Cnty.*, 386 F.3d 963, 968 (10th Cir. 2004)).  In deciding whether the proposed class meets these requirements, the district court "must accept the substantive allegations of the complaint as true," but it "need not blindly rely on conclusory allegations of the complaint which parrot Rule 23 and may consider the legal and factual issues presented by plaintiff's complaints."  *Id*. (quotations omitted).  "[S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question" because the "class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011) (quotations and citations omitted).  However, a court's "primary function is to ensure that the requirements of Rule 23 are satisfied, not to make a determination on the merits of the putative class's claims."  *See CGC Holding Co., LLC v. Broad and Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014).  Accordingly, although a court "may not evaluate the strength of a cause of action at the class certification stage, it must consider, without passing judgment on whether plaintiffs will

prevail on the merits, whether remedying the harm alleged can be done on a class-wide basis in conformity with Rule 23." *Id.* at 1088 (citation and alterations omitted).

## III. ANALYSIS

Before addressing the four prerequisites set forth in Rule 23(a), the Court must determine whether plaintiff has proposed an ascertainable class. "Although not specifically mentioned in the rule, an essential prerequisite to an action under Rule 23 is that there must be a class." *Edwards v. Zenimax Media Inc.*, No. 12-cv-00411-WYD-KLM, 2012 WL 4378219, at *4 (D. Colo. Sept. 25, 2012) (quotations omitted); *see also Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013) (noting that "[c]lass ascertainability is an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)" (quotations omitted)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Donaca v. Dish Network, LLC*, 303 F.R.D. 390, 397 (D. Colo. 2014).

Plaintiff proposes the following class: "All current and former Cutters Operators who worked in Colorado and were paid an hourly rate and bonus at any time from June 14, 2011 through Summer 2016." Docket No. 80 at 4.

As the Court found in its previous Order, this is an ascertainable class. It is ascertained by reference to objective criteria, namely, Cutters operators in a particular time period in a particular geographic location being paid according to a particular pay schedule. None of the these metrics are subjective, and determining who is in the putative class is simple.

Rule 23(a) looks to four criteria to determine whether a class should be certified:

> (1) "the class is so numerous that joinder of all members is impracticable";
>
> (2) "there are questions of law or fact that are common to the class";
>
> (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and
>
> (4) "the representative parties will fairly and adequately represent the interests of the class."

*CGC*, 773 F.3d at 1086. The Court finds that plaintiff has failed to satisfy the commonality requirement of Rule 23(a) and the predominance requirement of Rule 23(b) and, as a result, he has not met his burden under Rule 23 to certify the class.

Rule 23(a)(2) looks to whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The questions of law and fact need not be identical and "even a single common question will do." *Wal-Mart Stores*, 564 U.S. at 359. However, "Rule 23 is more than a pleading standard." *See Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013). Thus, "the party seeking class certification must affirmatively demonstrate his compliance with the rule." *Id.* (citing *Wal-Mart Stores*, 564 U.S. at 351). For commonality, "the mere raising of a common question does not automatically satisfy Rule 23(a)." *Id.* at 1218. Instead, "the common contention must be of such a nature that it is capable of *classwide resolution* – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Plaintiff argues that the common question is "whether Cutters' policy of excluding bonuses from overtime rates violated its agreement to pay Operators as non-

exempt employees." *See* Docket No. 80 at 10. While plaintiff is correct that this is in fact a common question present for each putative class member, it is not the common question that would render this dispute capable of resolution in "one stroke." *See XTO*, 725 F.3d at 1217.

Plaintiff's claim for breach of contract is based on a "unilateral" contract theory. *See* Docket No. 89 at 3 ("The existence of [] unilateral contracts cannot seriously be disputed.") Plaintiff does not argue that he has a contract that states that he is to be treated as a non-exempt employee, but rather that, "in exchange for their work, [d]efendants offered to pay Operators as non-exempt employees. Upon completion of that work, [d]efendants were bound to pay Operators as promised." *See Id.* In the employment context, an employee must "prove[] that the employer made an offer and that the employee's initial or continued employment constituted acceptance." *See Watson v. Pub. Serv. Co. of Colo.*, 207 P.3d 860, 868 (Colo. App. 2008). But "the employer must manifest its willingness to enter into a bargain in such a way as to justify the employee in understanding that assent was invited by the employer *and* that the employee's assent would conclude the bargain." *Id.* (citing *Continental Airlines, Inc. v. Keenan*, 731 P.2d 708, 711-12 (Colo. 1987)). It is only this manifestation on behalf of the employer that "shows that the employer intended to make an offer for a unilateral contract." *Id.* While the Court cannot "make a determination on the merits of the putative class's claims," *see CGC*, 773 F.3d at 1087, resolving a Rule 23 motion still requires "considerations that are enmeshed in the factual and legal issues comprising" the cause of action, *Wal-Mart Stores*, 564 U.S. at 351, and it is "impractical to construct

an impermeable wall" that prevents consideration of the merits to some degree in a Rule 23 action. See CGC, 773 F.3d at 1087 (quotations and citation omitted). Accordingly, looking to what a plaintiff, and the class, must prove to support his unilateral contract theory demonstrates that there are not common questions that drive the resolution of the proceeding.

First, plaintiff has failed to demonstrate that each putative class member in Colorado was subject to the materially same unilateral contract. Critically, plaintiff "simply cannot advance a single collective breach of contract action on the basis of multiple contracts where the contracts contain materially different language." See XTO, 725 F.3d at 1219 (citation, quotations, and alterations omitted). For a unilateral contract claim, plaintiff must demonstrate that defendant manifested an intent to offer a unilateral contract and that plaintiff was justified in relying on that manifestation. See Watson, 207 P.3d at 868. But plaintiff has offered no evidentiary support for his contention that defendant made the same manifestation to each operator and that each operator was justified in relying on that manifestation. "Rule 23 is more than a pleading standard," and plaintiff must "affirmatively" demonstrate the commonality requirement. See XTO, 726 F.3d at 1217. Plaintiff essentially asks the Court to take him at his word defendant manifested the same intent as to the nearly 100 putative class members, see Docket No. 80 at 6 ("[T]here are at least 100 putative class members."), and that this manifestation created the materially same contract for each putative class member. And while plaintiff argues that the handbook is "evidence[]" of defendant's manifestation, see Docket No. 109 at 3, the handbook only states that some employees

will be classified as exempt and others will not.  *See* Docket No. 80-2 at 11 (stating that employees are "categorized as either 'exempt' or 'non-exempt' for purposes of federal and state wage and hour laws" (emphasis omitted)).  As a result, the handbook merely states that some of defendant's employees might be considered exempt and some might not, not that plaintiff or the putative class members were in fact offered a unilateral contract to be considered non-exempt.

Additionally, plaintiff's request for certification presupposes the existence of a singular intent to treat all operators as non-exempt simply because they were "paid an hourly rate and bonus at any time from June 14, 2011 through Summer 2016."  Docket No. 80 at 4.  But there is nothing about being an hourly employee and being paid a bonus that, in and of itself, demonstrates any sort of unilateral contract.  Before the Court could determine whether defendant breached this purported unilateral contract, the Court would be required to determine whether the intent of defendant was to treat each particular class member as non-exempt based on defendant's particular manifestation of intent as to that class member.  Plaintiff must provide evidence of "uniform employment practices" to demonstrate a common question, *see Wal-Mart Stores*, 564 U.S. 355, but plaintiff cannot do that when there is no evidence that any of the operators were actually classified as non-exempt or that defendant manifested a particular intent to treat them as such.

*Anderson Living Trust v. WPX Energy Production, LLC*, 306 F.R.D. 312 (D. N.M. 2015), is instructive.  There, the plaintiff sought to certify a class of oil and lease rights holders for alleged royalty underpayment.  *See id.* at 438-440.  While it was clear that

the royalties were paid "under a uniform policy," the court nevertheless found that the "uniform payment policy . . . [did not] satisf[y] rule 23(a)(2)." *See id.* at 438. Specifically, "how [] the class members [were] entitled to be paid . . . [was] an individualized inquiry" that defeated commonality. *See id.* at 438-39. Specifically, "the primary issue [was] how much the Plaintiffs should have been paid, and the Defendants' practices do not answer that question in a common way." *Id.* at 439. The same issue arises here. Even if there was a uniform pay policy generally for operators, the Court is required to determine how much each putative class member was entitled to be paid based on that class member's purported unilateral contract. *See Watson*, 207 P.3d at 868. Thus, while plaintiff is right that whether Cutters violated this purported agreement is resolvable on a classwide basis, it is not the common question that is "apt to drive the resolution of the litigation." *Wal-Mart Stores*, 564 U.S. at 350. As a result, there is no common question suitable for resolution pursuant to Rule 23.

Even if plaintiff could surmount this commonality issue and submit evidence that each putative class member's general pay structure was modified by the same unilateral contract, plaintiff would still fail under Rule 23(b), which "demands a rigorous analysis." *See XTO*, 725 F.3d at 1220 (citation and quotations omitted). Plaintiff contends that his proposed class satisfies the requirements of Rule 23(b)(3) because common questions predominate over individual ones and a class action is the superior means of adjudicating the controversy. *See* Docket No. 80 at 9. The Court disagrees. Rather, the purported common question – whether defendant breached its agreement to pay overtime – will succumb to numerous individual issues.

9

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting individual members." *See* Fed. R. Civ. P. 23(b)(3). "[P]redominance is not established simply by virtue of a uniform payment methodology." *See XTO*, 725 F.3d at 1220. "A plaintiff may claim that every putative class member was harmed by the defendant's conduct, but if fewer than all of the class members enjoyed the legal right that the defendant allegedly infringed, or if the defendant has non-frivolous defenses to liability that are unique to individual class members, any common questions will be submerged by individual ones." *See id.* (citing *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010)).

First, as discussed above, the Court will be required to determine whether each putative class member had the same unilateral contract with the same terms. If, after conducting that analysis, "fewer than all of the class members," *see id.* – which in this case is any operator who was paid an hourly rate and a bonus, Docket No. 80 at 4 – had a unilateral contract to be treated as non-exempt, then common issues will not predominate. *See XTO*, 725 F.3d at 1220 ("[I]f fewer than all of the class members enjoyed the legal right that the defendant allegedly infringed . . ., any common questions will be submerged by individual ones."). Each putative class member will require a separate inquiry into whether (1) defendant sufficiently manifested an intent to modify the terms of the employment contract to treat a particular class member as non-exempt and (2) that the putative class member was justified in relying on that assent. These inquiries are not trivial and are critical to even determining whether each plaintiff

had a similar pay schedule.

Second, defendants "ha[ve] non-frivolous defenses to liability that are unique to individual class members." *XTO*, 725 F.3d at 1220. In Colorado, there is a three year statute of limitations for contract claims. *See* Colo. Rev. Stat. § 13-80-101(1)(a) (stating that "[a]ll contract actions" must be commenced "within three years after the cause of action accrues, and not thereafter"). While this three year limitations period would apply to all putative class members, determining when to start that period is individualized. "A cause of action for breach of any express or implied contract . . . shall be considered to accrue on the date the breach is discovered or should have been discovered by the exercise of reasonable diligence." *See* Colo. Rev. Stat. 13-80-108(6). Determining the accrual date is not common to the class, and will depend on the individual, that individual's contract, what that individual knew, and when he or she should have discovered defendants' alleged breach. While "there may be common evidence concerning the amount of diligence a reasonable [plaintiff] would exercise in discovering whether he or she was being" underpaid, there are still issues regarding "when specific individuals would have discovered their causes of actions," which thus presents "individualized and not common issues." *See Anderson*, 306 F.R.D. at 444.

In sum, plaintiff has not demonstrated commonality and, even if he did, individual issues would predominate over any common ones. As a result, plaintiff has failed to meet his burden for certification under Rule 23.

## IV.  CONCLUSION

It is therefore

**ORDERED** Plaintiff's Renewed Motion for Class Certification of State Law Claims [Docket No. 80] is **DENIED**.  It is further

DATED March 29, 2021.

                                              BY THE COURT:

                                              PHILIP A. BRIMMER
                                              Chief United States District Judge